# EXHIBIT B

Joshua L. Thomas Esq.
Supreme Court ID 003992012
225 Wilmington-West Chester Pike
Suite 200
Chadds Ford, PA 19317
Phone: (215) 806-1733
Fax: (888) 314-8910
Email: JoshuaLThomas@gmail.com

| | |
|---|---|
| THS Group LLC<br>300 McGaw Drive<br>Edison, NJ 08837<br>Plaintiff<br><br>v.<br><br>Covalent Marketing LLC<br>20 W. Kinzie St., 17th FL<br>Chicago, IL 60654<br>And<br><br>IBM<br>1 Orchard Road<br>Armonk, NY 10504<br>And<br><br>JSL Enterprises, LLC<br>23 Burlwood Dr<br>Burlington, CT 06013-2502<br>And<br><br>Acoustic, L.P.<br>100 Summit Drive<br>Suites 911 & 912<br>Burlington, MA 01803<br>And<br><br>mGage: Mobile Marketing<br>470 7th Ave, 7th Floor<br>New York, NY 10018<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>MIDDLESEX COUNTY<br>LAW DIVISION<br><br>DOCKET NO.: MIDL006493-20<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

**AND NOW** Plaintiff ("Plaintiff"), by and through his attorney, Joshua L. Thomas, Esq. hereby move for judgment against Defendants Covalent Marketing LLC, IBM, Acoustic, L.P. and JSL Enterprises, LLC. ("Defendants"), for the reasons and amounts set forth below. In support thereof, Plaintiff aver as follows:

1. This is a lawsuit against Defendants arising out of a failure of their product to adequately perform that has already resulted in hundreds of thousands of dollars in damages, and has put Plaintiffs at risk of substantially more, yet have failed to take responsibility for the damages.

## PARTIES

2. THS Group LLC is a corporation organized and existing and operating under the laws of the state of New Jersey, with a principal place of business at 300 McGaw Drive Edison, NJ 08837.

3. Covalent Marketing LLC (Covalent) is a corporation organized and existing and operating under the laws of the state of Illinois, with a principal place of business at 20 W. Kinzie Street, 17th FL Chicago, IL 60654 but has had sufficient contacts with New Jersey to be a party.

4. IBM is a corporation organized and existing and operating under the laws of the state of New York, with a principal place of business at 1 Orchard Road Armonk, NY 10504 but has had sufficient contacts with New Jersey to be a party.

5. JSL Enterprises, LLC (JSL) is a corporation organized and existing and operating under the laws of the state of Connecticut, with a principal place of business at 23 Burlwood Drive Burlington, CT 06013-2502 but has had sufficient contacts with New Jersey to be a party.

6. Acoustic, L.P. (Acoustic) is a corporation organized and existing and operating under the laws of the state of New Jersey, with a principal place of business at 100 Summit Drive Suites 911 & 912 Burlington, MA 01803 but has had sufficient contacts with New Jersey to be a party.

7. mGage: Mobile Marketing (mGage) is a corporation organized and existing and operating under the laws of the state of New York, with a principal place of business at 470 7th Ave, 7th Floor, New York, NY 10018 but has had sufficient contacts with New Jersey to be a party.

## JURISDICTION AND VENUE

8. Defendants have conducted and, upon information and belief, continue to conduct substantial business within the State of New Jersey on a regular basis.

9. The incidents giving rise to this action occurred in Edison, NJ 08837.

10. Venue is proper in Edison, NJ 08837.

11. Venue is also proper in Middlesex County because the incidents giving rise to this action occurred in Middlesex County and/or Defendants are doing business in Middlesex County.

## FACTS

1. Plaintiff entered into an agreement on April 1, 2019 with Defendant JSL Enterprises, LLC (JSL). (See Exhibit A – "Mutual Nondisclosure Agreement").

2. Plaintiffs were introduced to this platform by JSL to consolidate the multiple marketing platforms into one.

-3-

3. JSL directly advised that Plaintiff move to an IBM platform, specifically the IBM Watson program which ultimately became the Platform offered by Acoustic, L.P. (Acoustic).

4. Plaintiff entered into an agreement on June 5, 2019 with Defendant Covalent Marketing LLC (Covalent). (See Exhibit B – "Software Reseller Agreement").

5. The first bill was issued by Defendant Covalent for "IBM Watson Campaign Automation Subscription and Setup" on July 15, 2019 from Covalent. (See Exhibit C – Purchase Order).

6. Covalent is a reseller of the IBM/Acoustic platform.

7. JSL was contracted to manage this platform for Plaintiff until a few months after the issue occurred that this complaint involved, at which time Plaintiff terminated their services.

8. Upon information and belief, the IBM/Acoustic platform is the platform that acts as the management portal for our Email and SMS marketing.

9. IBM/Acoustic uses a third-party service to deliver SMS messages through a short code which is done through Mgage.

10. That system that Covalent used was the IBM/Acoustic platform.

11. The IBM/Acoustic platform handles email sends and has a relationship with mGage, where mGage provides the gateway and Acoustic provides the interface for the service.

12. Implementation includes adding the email creative system using "SMS onboarding".

13. Further, a series of calls with IBM are also made, that then walk through the platform and walks through the text as part of the service, used for marketing.

14. It is a text to join platform for people to opt in and opt out.

15. Eventually, JSL and IBM were advised there was a complaint that people were responding STOP and were not being opted out.

16. JSL passed that initial complaint on to Acoustic and mGage.

17. They found that STOP was not prerecorded and was keeping the contact from fully being able to opt out, and this was the result of a "glitch".
18. The "glitch" resulted in the contacts that were sent a SMS message and replied STOP to the campaign weren't actually opted out of the campaign even though everything on Plaintiff's system was setup properly.
19. The glitch was discovered by Plaintiff and they relayed the issues to JSL via personal phone calls and text messages.
20. JSL then created an urgent support ticket with IBM to address the issue and IBM replayed that to Mgage to find the issue and resolve.
21. Once mGage was able to test that out, they were able to properly opt-out contacts.
22. Once the Stop was resolved, mGage ran a report and provided a list of the contacts who were effected.
23. JSL immediately opt-ed those numbers out or "scrubbed".
24. Further, there were apparently manual dials in violation of that scrub.
25. However, before that point, the damage was done.
26. There have been multiple settlements required, so far totaling $263,685.50. (See Exhibit D – all settlement agreements).
27. Additionally, it was learned that relatively recently, defendants were still responsible for another "glitch" and there were further violations that could result in potential liability.
28. Defendants are directly responsible for these damages and all continuing, foreseeable damage from the risk from the glitch.
29. In fact, this concern has now been actualized, with a complaint that was filed in the United States District Court for the Eastern District of Virginia. (See Exhibit E).

30. This is the **exact** concern that Plaintiffs were trying to avoid, however, because of Defendants' negligence, they are now forced to defend a new lawsuit with potentially hundreds of thousands of dollars or more of damages.

31. Plaintiff should not be liable for these damages, and should be completely indemnified for them, as they had every possible system in place to avoid the exact glitches that Defendants were responsible for.

32. Had Defendants properly handled their services they way they had agreed, there would not have been the prior cases or the current ongoing lawsuit.

## COUNT I – BREACH OF CONTRACT
### Plaintiff v. Defendants

1. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

2. To find a Breach of Contract under New Jersey Law:

    A. The parties entered into a contract containing certain terms.

    B. The plaintiff did what the contract required the plaintiff to do.

    C. The defendant did not do what the contract required the defendant to do.

    D. The defendant's breach, or failure to do what the contract required, caused a loss to the plaintiff.

    *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992).

3. Further, "[a]n "installment contract" is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause "each delivery is a separate contract" or its equivalent." *NJ Rev Stat § 12A:2-612* (2013).

4. In this case, Defendant agreed to make payments each month as stated above.

5. Plaintiff complied with what they were required to do in the agreement.

6. As such, pursuant to *NJ Rev Stat § 12A:2-612*, there were numerous separate breaches, for each time the Defendants cause a glitch.

7. As such, a clear breach of contract has occurred.

8. As a result of Defendant's aforesaid action, Plaintiff is entitled to punitive damages along with the aforesaid compensatory damages, interests and costs of suit.

9. Further, Plaintiff is entitled to reasonable attorney's fees and costs. See Grow Co., Inc. v. Chokshi, 424 N.J. Super. 357, 367-68 (App. Div. 2012). *("When calculating the amount of reasonable attorney's fees, courts must determine the lodestar, defined as the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate.")*

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants with respect to Count I hereof, in an amount necessary to fully compensate Plaintiff for the material breaches, including:

(i) damages to the fullest extent provided by law;

(ii) Punitive damages, to prevent repeated future conduct;

(ii) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and

(iv) such other relief as this Court may deem just and proper.

-7-

## COUNT II – BREACH OF EXPRESS WARRANTY IN VIOLATION OF N.J.S.A. § 12A:2-313
### Plaintiff v. Defendants

10. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

11. To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege (1) an affirmation of fact, promise, or description about the product; (2) the affirmation of fact, promise, or description became part of the basis of the bargain for the product; and (3) the product ultimately did not conform to the affirmation of fact, promise, or description. *In re Avandia Mktg. Sales Practices & Prods. Liab. Litig.*, 588 F. App'x 171, 175 (3d Cir. 2014) (citing N.J.S.A. § 12A:2-313).

12. Moreover, New Jersey law requires that guarantees of future performance be specific. *Id.* (citing *Herbstman v. Eastman Kodak Co.*, 342 N.J. 1, 12 (N.J. 1975)).

13. "[T]he seller need not use formal words such as 'warrant' or 'guarantee' or have a specific intention to make a warranty . . . . But that does not mean [that a plaintiff] is relieved from identifying the affirmation of fact, promise, or description he contends constitutes the express warranty under New Jersey law." *Id.* (quoting N.J.S.A. § 12A:2-313).

14. In addition, proximate cause and damages are required. *Marcus v. BMW of N. Am.*, 687 F.3d 583, 600 n.8 (3d Cir. 2012).

15. Finally, New Jersey has adopted the notice requirement of the Uniform Commercial Code ("UCC"), which requires statutory notice to the seller as a "condition precedent to filing any suit for breach of warranty." *Dicuio*, 2012 WL 3278917, at *11 (citation omitted).

16. The facts above show a clear breach in this case.

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants in an amount necessary to fully compensate Plaintiff for the material breaches, including:

(i) damages to the fullest extent provided by law;

(ii) Punitive damages, to prevent repeated future conduct;

(iii) Reasonable attorneys fees;

(iv) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and

(v) such other relief as this Court may deem just and proper.

### COUNT III – NEGLIGENCE
### Plaintiff v. Defendants

17. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

18. Defendants acted negligently in taking the aforementioned actions.

19. To establish negligence under New Jersey law, a plaintiff must prove four core elements: (1) a duty of care; (2) a breach of that duty; (3) proximate cause; and (4) actual damages. *Polzo v. County of Essex*, 960 A.2d 375, 196 N.J. 569, 584 (2008).

20. Defendants all had a duty of care towards Plaintiffs in this matter and they breached that duty of care with the aforementioned actions.

21. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiffs that are outlined more fully above and, as a result, Defendants are liable to compensate Plaintiffs for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

22. Plaintiffs seek actual and compensatory damages for particular material, economic and financial losses suffered directly by her as the proximate result of the injury.

23. Plaintiffs must be compensated for such ill effects they experienced because of the actual damages they've incurred.

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants in an amount necessary to fully compensate Plaintiff for the material breaches, including:

    (i) damages to the fullest extent provided by law;

    (ii) Punitive damages, to prevent repeated future conduct;

    (iii) Reasonable attorneys fees;

    (iv) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and

    (v) such other relief as this Court may deem just and proper.

### COUNT IV – INDEMNITY
### Plaintiff v. Defendants

24. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

25. Indemnity provisions are construed in accordance with the general rules for construction of contracts with one important caveat: ambiguities are strictly construed against the indemnitee. Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001).

26. In keeping with that principle, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191 (1986).

27. Where an indemnitee is partially but not solely at fault, as here, public policy does not preclude indemnification. Leitao v. Damon G. Douglas Co., 301 N.J. Super. 187, 192 (App. Div. 1997) ("Even in the context of an indemnity agreement in a construction contract, it is not against public policy for the indemnitor to promise to hold harmless the indemnitee for the indemnitee's own negligence as long as the indemnitee is not solely at fault.").

28. As such, based on the above facts, Plaintiff should be completely indemnified because of Defendants' actions.

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants in an amount necessary to fully compensate Plaintiff for the material breaches, including:

 (i) damages to the fullest extent provided by law;

 (ii) Punitive damages, to prevent repeated future conduct;

 (iii) Reasonable attorneys fees;

 (iv) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and

 (v) such other relief as this Court may deem just and proper.

### COUNT V – RESPONDEAT SUPERIOR
#### Plaintiff v. Defendants

29. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

30. At all material times hereto IBM, owned and directed and was responsible for all actions taken by the other Defendants.

31. The established doctrine of Respondeat Superior provides that an employer is obligated to persons harmed by employees acting in the course of their employment.

-11-

32. The "essence" of vicarious liability on the basis of respondeat superior is control. Galvao v. G.R. Robert Constr. Co., 179 N.J. 462, 467 (2004) (internal quotations omitted).

33. Underlying the doctrine is the principle that an employer who exercises control over an employee in the performance of his duties, "must answer for any injury that a third person may sustain from it." Carter v. Reynolds, 175 N.J. 402, 408 (2003). Vicarious liability "'is a rule of policy, a deliberate allocation of risk.'" Carter v. Reynolds, 345 N.J. Super. 67, 75 (App. Div. 2001) (quoting Hinman v. Westinghouse Elec. Co., 88 Cal. Rptr. 188, 190 (Cal. 1970)), aff'd, 175 N.J. 402 (2003).

34. Restatement 228(1) describes four factors that support a finding that an employee's act is within the scope of her employment: (1) the act is of a kind the employee is hired to perform, (2) the act occurs within authorized time and space limits, (3) the act is actuated at least in part by a purpose to serve the employer, and (4) if force is intentionally used it is not unexpectable.

35. In this case, the above facts and court pleadings show all four factors have been met.

36. As to the first, IBM specifically had control and ownership over the Defendants and the system they used; in addition to the aforementioned facts, and have already admitted as much.

37. As to the second, Defendants apparently only used the system that they got from IBM.

38. As to the third, the purported purpose was to offer services, but because of the "glitch" which was, foreseeable, those services caused substantial damage.

39. As to the fourth, it is entirely not unexpectable these actions would have resulted in the damages and as such, the employer(s) should be held responsible.

40. As can be seen, there is a strong case for Respondeat Superior and as such, the employer(s) should be held responsible.

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants in an amount necessary to fully compensate Plaintiff for the material breaches, including:

- (i) damages to the fullest extent provided by law;
- (ii) Punitive damages, to prevent repeated future conduct;
- (iii) Reasonable attorneys fees;
- (iv) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and
- (v) such other relief as this Court may deem just and proper.

### COUNT VI – VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT (CFA), N.J.S.A. 56:8-2
#### Plaintiff v. Defendants

41. Plaintiff incorporate the allegations contained in the aforesaid paragraphs as if same were set forth fully at length herein.

42. The Defendant has used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiff rely upon such concealment, suppression or omission.

43. The Plaintiff avers the unfair, deceptive, and unlawful practices by the Defendant misled and deceived Plaintiff, resulting in damages thereby, constituting unlawful practices in

violation of N.J.S.A. 56:8-2, and has caused injury to Plaintiff as contemplated by N.J.S.A. 56:8-19 in actual damages of emotional distress, loss of monies paid towards a *fraud in factum*, and other costs to defend the Plaintiff.

44. At all times relevant and material hereto, then the Plaintiff was a consumer of the Defendant goods and services and as such the conduct of the Defendant and the transaction was governed by the New Jersey Consumer Fraud Act N.J.S. A. 56:8-1 et seq.

45. At all times relevant and material hereto the Defendant did violate the New Jersey Consumer Fraud Act by engaging in deceptive and fraudulent practices as stated above.

46. The aforementioned actions were a violation of The False Claims Act 31 U.S.C. §§ 3729 - 3733, as in case *Gonzalez v. Wilshire Credit Corp.*, Supreme Court of New Jersey, August 29, 2011.

47. In *Cox v. Sears Roebuck*, September 15, 1994 138 N.J. 2 A-123 September term 1993." the NJ Supreme Court held: "The amendment to the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, provides for private causes of action, with an award of treble damages, attorneys' fees, and costs."

48. Upon "strict scrutiny" application, the Court would be compelled to protect Plaintiff against blatant fraud being perpetrated upon Defendant as well as the Court under the "color of law".

49. To do otherwise would be a travesty of justice.

50. "Like most remedial legislation, the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1 to 20*, should be construed liberally in favor of consumers."

51. The actions of the Defendants were performed for their own financial self-interests, in detriment to the rights and position of the Plaintiff.

**WHEREFORE**, Plaintiff respectfully request that judgment be entered in their favor and against Defendants in an amount necessary to fully compensate Plaintiff for the material breaches, including:

(i) damages to the fullest extent provided by law;

(ii) Punitive damages, to prevent repeated future conduct;

(iii) Reasonable attorneys fees;

(iv) pre- and post-judgment interest and Court costs to the fullest extent permitted by law; and

(v) such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

A jury trial is demanded on all claims so triable.

Respectfully submitted,

Dated: 09/10/2020                        /s/ Joshua L. Thomas
                                                Joshua L. Thomas, Esq.

## CERTIFICATION

Pursuant to New Jersey Court Rule 4:5-1, I hereby certify that the matter in controversy is not the subject of any other action pending and any court and is likewise not the subjects of any pending arbitration proceeding, to the best of my knowledge or belief. I further certify that I have no knowledge of any contemplated action or arbitration proceeding regarding the subject matter of this action and that, other than the parties set forth in this pleading, I am not aware of any other parties who should be joined in this action. In addition, I recognize the continuing obligation of each party to file and serve on all parties and the court an certification if there is a change in the facts stated in this original certification.

/s/ Joshua Thomas<br>
Joshua Thomas, Esquire